UNITED STATED DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

**MICHAEL B. KINEARD** ;
  Plaintiff,

v.                                             CASE NO: 2:23-cv-560-SPC-KCO
                                               **Jury Trial Demanded**

**JON CARNER**; In his individual and Official capacities as
Facility Administrator at the Florida Civil Commitment Center,
**ROBERT HOUSTON**; in his individual and Official capacities
as Security Director at the Florida Civil Commitment Center,
**FNU. SMITH**; in his individual capacity as a Security Officer
at the Florida Civil Commitment Center, and
**FNU. DAVIS**; in his individual capacity as a Security Officer
at the Florida Civil Commitment Center,

  Defendants.

*Courtney Jones, Clinical Director, FCCC, In her Official and Individual Capacity*

*Amended*

**PRO SE LITIGANT'S CIVIL RIGHTS COMPLAINT FOR CIVILLY COMMITTED DETAINEE AT THE FLORIDA CIVIL COMMITMENT CENTER**

I.   **COMPLAINT:**

**JURISDICTION**

The Plaintiff in the above entitled matter invoke the jurisdiction of this Court to hear and decide his condition of confinement claims being brought under **42 U.S.C. § 1983, and 28 U.S.C. § 1988;** against Municipal Defendants arising under federal law. The Plaintiff further invoke the Pendant and Supplemental Jurisdiction of this Court to hear and decide his claims arising under State law; Pursuant to **28 U.S.C. §§ 1331, and § 1343,.**

**VENUE**

Venue in the United States District Court, Middle District of Florida; Fort Myers Division is proper, in that all of the acts which gives rise to this cause of action occurred within this District.

## II.     PLAINTIFF'S INFORMATION:

At all times relevant to this complaint, The Plaintiff was a resident housed at the Florida Civil Commitment Center in Arcadia, Florida.

The Plaintiff's current address being listed as follows: Florida Civil Commitment Center 13619 Southeast High way 70, Arcadia, Florida 34266.

The Plaintiff brings this suit against the following Defendants; s individually and jointly; as employees of Well Path Recovery Solution.

## III.     STATUS:

The Plaintiff is currently a Pro Se Litigant's Civilly Committed Detainee at The Florida Civil Commitment Center in Arcadia, Florida.

## III.     DEFENDANT'S INFORMATION:

At all times relevant to this complaint; the Defendants were employees or law enforcement Officers of Well Path Recovery Solution; acting in their individual or Official capacities to oversee, direct, or to control the overall operation of the facility at the Florida Civil Commitment Center.

Well Path Recovery Solution is an entity contracted with the State of Florida; Florida Department of Children and Families Services at the Florida Civil Commitment Center. **(Herein After; FCCC).**

Well Path Recovery Solution hired Jon Defendant Carner as Facility Administrator; vested with final decision and policy making authority to oversee, direct, and control the overall operation of FCCC.

The Plaintiff sues Defendant Carner in his individual and official capacities as Facility Administrator at FCCC.

3

Defendant Carner's last known address is being listed as: FCCC 13619 Southeast High Way 70, Arcadia, Florida 34266.

Well Path Recovery Solution hired Defendant Robert Houston as Security Director at FCCC; vested with the authority to properly train, supervise, investigate, discipline, reprimand, and to terminate personnel that exhibits any unlawful acts at FCCC.

The Plaintiff sues Defendant Houston in his individual and official capacities as Facility Administrator at FCCC.

Defendant Houston's last known address is being listed as: FCCC 13619 Southeast High Way 70, Arcadia, Florida 34266.

Well Path Recovery Solution hired Defendant FNU. Smith as a Security Officer vested with the authority to uphold the laws of the State of Florida and the United States Constitution.

The Plaintiff sues Defendant Smith in his individual capacity as a Security officer at FCCC.

Defendant Smith's last known address is being listed as: FCCC 13619 Southeast High Way 70, Arcadia, Florida 34266.

Well Path Recovery Solution hired Defendant FNU. Davis as a Security Officer vested with the authority to uphold the laws of the State of Florida and the United States Constitution.

The Plaintiff sued Defendant Davis in his individual capacity as a Security officer at FCCC.

Defendant Davis's last known address is being listed as: FCCC 13619 Southeast High Way 70, Arcadia, Florida 34266.

### IV.    STATEMENT OF THE FACTS:

1. Based upon knowledge, information and belief; Defendant Carner; has a history of sexual harassment while a Correctional Official in Florida Department of Corrections, and against female staff members at FCCC. **(See Attached Exhibits- - 2-13).**

2. Based upon knowledge, information and belief; Defendant Carner also has a history of recruiting violent Correctional Officers while a Captain in Florida Department of Corrections to carry out violent assaults upon prison inmates within the prison system. **(See Attached Exhibits- 2-13) .**

3. Defendant Carner; as Facility Administrator at FCCC, who has a duty of properly screening each staff that apply for employment at FCCC; knew or should have known that Defendant Smith and Defendant Davis possessed a high propensity for violence, and that his failure to properly screen these Defendants would have greatly increase the risk of violent attacks upon residents at FCCC. **(See Attached Exhibits- - 2-13).**

4. After possessing exact and detailed knowledge of Defendant Smith and Defendant Davis propensity for violence; Defendant Carner totally disregarded this risk by hiring these Defendants, which was the driving force behind the Plaintiff being violently assaulted by Defendant Smith and Defendant Davis and being injured. **(See Attached Exhibits- 2-13).**

5. As a direct result of Defendant Carner's failure to properly screen, train, supervise, investigate, discipline, reprimand, or terminate Defendant Smith and Defendant Davis prior to the Plaintiff being injured; was the driving force behind the Plaintiff being injured and caused to suffer a broken nose, a fractured jaw, the loss of three tenth, and permanent damage to his eye. **(See Attached Exhibits- -2-13)**

6. Wherefore, on May 10, 2023, at approximately 3:20 p.m.; Defendant Smith approached the Plaintiff's confinement cell; 2076 in the Lake's confinement unit at FCCC and stated: "Fuck Nigger, get off the motherfucking door running your motherfucking mouth or you ain't eating tonight." **(See Attached Exhibits- 1)**

7. Both Defendant Smith and Defendant Davis has a long history of violently assaulting residents and depriving them of their meals in the confinement unit at FCCC; and have repeatedly deprived the Plaintiff of numerous meals with threats of violence if the Plaintiff should reported such to lawful authorities.

8. After Defendant Smith threaten to deprive the Plaintiff of his meal; the Plaintiff stated that he wanted to see the shift captain, because he was tired of Defendant Smith and Defendant Davis repeatedly depriving him of his meals.

9. At approximately 3:40 p.m., during the serving of the evening meal, Defendant Smith stated to the Plaintiff: "I told you fuck nigger, you ain't getting a tray tonight either."

10. The Plaintiff then called for someone on wing restriction **(residents in the confinement unit that are not locked in their confinement cells)** to get the captain.

11. At approximately 5:40 p.m., the Plaintiff began kicking his confinement cell door in an attempt to get the shift captain to come to Lake's confinement unit.**(See Attached Exhibits- )**

12. Defendant Smith immediately came to the Plaintiff's confinement cell door and stated: " Get the fuck off the door fuck nigger or I'm coming in there and beat your motherfucking ass; because I told you, you ain't seeing the captain and you ain't getting a tray. I run this shit back here. 'That's why Carner got me back here, to keep you fuck niggers in check.'" **(See Attached Exhibits-2-14, 46-47).**

13. The Plaintiff again told Defendant Smith to either give him his dinner tray or get the captain, because he was tired of him; and Defendant Davis taking his food trays.

14. Defendant Smith got on his walkie talkie radio and called the staff working in the Water's control room and told them to open the Plaintiff's confinement cell door.

15. When the Plaintiff's confinement cell door was open; Defendant Smith entered the Plaintiff's confinement cell and told Defendant Davis to watch his back.

16. Defendant Davis entered the Plaintiff's confinement cell behind Defendant Smith and stated: "Go ahead, Dog, I got you. 'Beat that fuck nigger's ass.'"

17. Defendant Smith then stated: "I'm going to show this fuck nigger I ain't nothing to be fucked with;" and began hitting the Plaintiff in the face with his closed fists.

18. After Defendant Smith had hit the Plaintiff multiple times in the face; the Plaintiff fell to the floor of his confinement cell and Defendant Smith began kicking the Plaintiff in the face, head, mouth, and eye. **(See Attached Exhibits- 1)**

19. While Defendant Smith was kicking the Plaintiff in the face, head, mouth, and eye; Defendant Davis stated: "Do the George Floyd with that fuck nigger, Dog. 'They can't do shit to you; I helped killed one in South Florida and got away with it.'"

20. After Defendant Smith had beaten the Plaintiff, Defendant Smith stated: "And if ant one ask you what happed, you better say you slipped and fell or I will come back and beat your ass again and give you an outside charge for battery on an officer, fuck nigger." Defendant Smith and Defendant Davis then left the Plaintiff's confinement cell; leaving the Plaintiff laying there on the floor, covered in blood. **(See Attached Exhibits-14-47)**.

21. At approximately : p.m., the Plaintiff was taken to the medical department at FCCC.

7

22. After being seen by the medical staff at FCCC, it was determined that the Plaintiff needed to go to the hospital where the Plaintiff was diagnosed with a broken nose, fractured jaw, permanent eye damage, and the loss of three top front teeth. **(See Attached Exhibits-14-46).**

23. On May 11, 2023, two officers from the Desoto County Sheriff's Department reported to FCCC with regards to Defendant Smith's unprovoked and excessively violent assault upon the Plaintiff while Defendant Davis cheered on Defendant Smith's unlawful attacked upon the Plaintiff.

24. At the time the police reports were being filed; out of fear of Defendant Smith and Defendant Davis coming back to beat me the Plaintiff up again, the Plaintiff told the Desoto County Sheriff Officers that he had slipped and fell as instructed to do by Defendant Smith and Defendant Davis, because the Plaintiff feared Defendant Smith and Davis would beat him up again when they came back to work and charge the Plaintiff with battery on an officer.

V. **STATEMENT OF THE CLAIMS:**

This is an action for monetary damages arising out of rights secured by the United States Constitution; and State law.

1 Defendant Smith; a law enforcement office did, while acting under color of State law with the malicious intent of subjecting the Plaintiff to unprovoked and excessively violent acts of cruel and unusual punishment, came into an agreement with Defendant Davis to carry out such acts of violence against the Plaintiff, and in furtherance of this agreement, Defendant Smith did carry out these wanton and malicious acts of violence against the Plaintiff by beating the Plaintiff with closed fists and kicking the Plaintiff in the face, head, mouth, and eye, Defendant Davis a law enforcement officer did, while acting under color of State law, looked on without intervening by enforcing a lawful policy or procedure; yet cheered on Defendant Smith's unlawful acts of

8

violent and cruel and unusual punishment upon the Plaintiff in violation of the Plaintiff's Fourteenth Amendment rights under the United states Constitution.

2. Both Defendant Smith and Defendant Davis; as law enforcement officers knew or should have known that such unprovoked and excessively violence acts of cruel and unusual punishment being committed against the Plaintiff would have greatly increased the risk of the Plaintiff's being badly injured; yet both Defendants recklessly disregarded such risk which was the driving force behind the Plaintiff being injured and caused to suffer a broken nose, a fractured jaw, the loss of three top front teeth, and permanent damage to his eye. **(See Attached Exhibits-14-46).**

3. As a direct result of Defendant Smith and Defendant Davis acts and indifference to act; the Plaintiff, Michael B. Kineard has injured and caused to suffer a broken nose, a fractured jaw, the loss of three top front teeth, and permanent eye damage. **(See Attached Exhibits-14-46).**

4. As law enforcement officers possessing exact and detailed knowledge of a scheme to subject the Plaintiff to unprovoked and excessively violent acts of cruel and unusual punishment; and totally disregarded the risk of harm by carrying out such acts of violence upon the Plaintiff that resulted in him suffering a broken nose, a fractured jaw, the loss of three top front teeth, and permanent eye damage, amounts to deliberant indifference to the rights of others and a violation of the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution. **(See Attached Exhibits-14-46).**

5. Defendant Davis; as a law enforcement officer knew or should have known that the unprovoked and excessively violent acts cruel and unusual punishment being carried out by Defendant Smith would be breaking the laws under the United States Constitution and the laws

9

of the State of Florida; by his failure to intervene to enforce a lawful policy or procedure. Yet, instead of Defendant Davis intervening to enforce a lawful policy or procedure that may have prevented Defendant Smith's unprovoked acts of violence upon the Plaintiff, Defendant Davis chose instead to encourage and cheer on Defendant Smith's unlawful acts upon the Plaintiff in all respects. As such, Defendant Davis breached this duty owed as a law enforcement officer and therefore, himself engaged in such acts of violence through his acts of encouragements and his failure to immediately report such acts of violence to lawful authorities; thereby Defendant Davis ultimately became the final decision and policy maker of Well Path Recovery Solution; which was the driving force behind the Plaintiff being injured and caused to suffer a broken nose, a fractured jaw, the loss of three top front teeth, and permanent eye damage, which amounts to deliberant indifference to the rights of others and a violation of the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution. **(See Attached Exhibits-14-46).**

6. Defendant Davis; a law enforcement officer owing a duty of care to the Plaintiff, yet failing to execute that duty which resulted in the Plaintiff being injured, amounts to negligence claims under the laws of the State of Florida.

7. Defendant Carner; as Facility Administrator at FCCC, vested with final decision and policy making authority responsible for directing, overseeing, and controlling the overall operation of the facility; yet failing to properly screen employee for any pass acts of violent behaviors before hiring, Defendant Carner clearly knew or should have known by such failure to acts would have greatly increased the risk of residents at FCCC being exposed to unnecessary acts of violence. Yet Defendant Carner negligently disregarded such a risk that ultimately resulted in the Plaintiff being injured and caused to suffer a broken nose, a fractured jaw, the loss of three teeth and permanent eye damage. **(See Attached Exhibits-14-46).**

8. Based upon information, knowledge and belief, as Defendant Carner has in the pass engaged in recruiting violent Correctional Officers and himself carrying out acts of violence against prison inmates in the Florida Department of Corrections, it was Defendant Carner's intent; absent of any mistake, of intentionally recruit security officers from Florida Department of Corrections with pass histories of violence, such as Defendant Smith and Defendant Davis to carry out unprovoked and excessively violent acts of cruel and unusual punishments upon residents at FCCC; with reckless disregards or concerns for the risk of harm to others, as Defendant Smith stated prior to his violent acts upon the Plaintiff: "…That's why Carner's got me here, 'to keep you fuck niggers in check.'" Is evidence that Defendant Carner's knew that Defendant Smith and Davis possessed a propensity of violence and with reckless disregards or concerns for the risk of harm to others; disregarded such risk which was the driving force behind the Plaintiff being injured and caused to suffer a broken nose, a fractured jaw, the loss of three teeth, and permanent eye damage. **(See Attached Exhibits-2-14,46 &47).**

9. As Defendant Carner knew or should have known Defendant Smith and Defendant Davis possessed a high risk of harm to the resident population at FCCC and disregarded this risk of harm by hiring Defendant Smith and Defendant Davis who ultimately carried out such acts of violence upon the Plaintiff , resulting in the Plaintiff being injured and caused to suffer a broken nose, a fractured jaw, the loss of three teeth, and permanent eye damage; which amounts to deliberate indifference to the rights of others in violation of the Plaintiff's Fourteenth Amendment rights to the United States Constitution. **(See Attached Exhibits-2-14,46 &47).**

10. Defendant Houston is liable for the acts of Defendant Smith and defendant Davis by virtue of the fact that he knew or should have known ;as Security Director at FCCC, that Defendant Smith and Defendant Davis possessed a high risk for violence prior to the Plaintiff's

being injured; yet Defendant Houston totally disregarded that risk by failing to properly train, supervise, investigate, reprimand, discipline, or terminate Defendant Smith and Defendant Davis, but tolerated Defendant Smith and Defendant Davis repeated acts of depriving residents of their meals, and repeated acts of assaults upon residents in the confinement unit at FCCC, and filed false reports to cover up and conceal such unlawful acts from the publics; which was the driving force behind Defendant Smith and Defendant Davis continuing in such lawful acts of violence against residents in the confinement unit at FCCC. Such acts and indifference to act amounts to deliberant indifference claims under Fourteenth Amendment to the United States Constitution. **(See Attached Exhibits-46 &47).**

11.  As such Defendant Houston ratified and acquiesced in the acts of Defendant Smith and Defendant Davis in all respects; which amounts to a breach of duty and negligence claims under to the laws of the State of Florida. **(See Attached Exhibits-46 &47).**

VI. **ADMINISTRATIVE PROCEDURES**

Although **42 U.S.C.§1997 E(a);** of the Prison Litigation Reform Act does not apply to civilly committed detainees housed at FCCC, the Plaintiff herein the above entitled matter has exhausted all available administrative remedies through the resident's administrative grievance procedures. **(See Attached Exhibits-A).**

VII. **RELIEF BEING SOUGHT;**

The relief being sought by the Plaintiff includes; but not limited to the following:

A.  ~~Commentary~~ Culpable damages against each applicable Defendant in the amount to be determined by a jury.

B.  Punitive damages against each applicable Defendant in the amount to be determined by a jury.

  C. Attorney fees and cost pursuant to **28 U.S.C. § 1988** against each applicable Defendant in the amount to be determined by a jury.

  D. Any further relief, both generally and specifically in which this Honorable Court may deem proper and just.

  E. The Plaintiff, Michael B. Kineard, demands a trial by jury.

**VIII. LITIGANT'S LEGAL HISTORY:**

The Plaintiff herein the above entitled matter has never litigated civil actions in the courts and believe as a matter of law, that he is entitled to proceed in Forma Pauperis as a confined individual pursuant to **28 U.S.C. § 1915(g).**

**IX. PLAINTIFF'S DECLARATION:**

Under **Federal Rule of Civil Procedure 11,** I Certify to the best of my knowledge, information, and belief that this complaint: **(1)** is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; **(2)** is supported by existing law or by a non-frivolous argument for extending or modifying existing law; **(3)** the factual contentions have evidentiary support or, if specifically so identified, will likely evidentiary support after a reasonable opportunity for further investigation or discovery; and **(4)** the complaint otherwise complies with the requirements of **Rule 11.**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.

I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

8-24-2023                  *Michael Kineard*

**DATE:**                       **Plaintiff's Signature:**