UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


MICHAEL BARRY KINEARD,

      Plaintiff,

v.                                Case No:  2:23-cv-559-JES-NPM

TRAYVIS SMITH, GIDEON L.
DAVID, COURTNEY JONES, JON
CARNER, and ROBERT HOUSTON,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on Defendants Trayvis Smith and Gideon L. David's Motion for Summary Judgment (Doc. #54.) Plaintiff Michael Barry Kineard did not respond, so the Motion is subject to treatment as unopposed.[1] See M.D. Fla. R. 3.01(d). Also before the Court is Kineard's Motion for Entry of a Settlement Proffer. (Doc. 53.)

### I.   Background and Kineard's Factual Allegations

Kineard is an involuntarily committed resident of the Florida Civil Commitment Center ("FCCC"). In his Second Amended Complaint,

---

[1] On August 26, 2025, the Court notified Kineard that not responding to the motion for summary judgment would signify that he did not oppose it and that if the Court grants the motion, that decision will be the Court's final decision, no trial will take place, and he would be precluded from later litigating this matter or any related matters. (Doc. 55 at 2.) Kineard sought an extension of time to file his response; the Court granted the motion and gave him until December 8, 2025, to file it. (See Docs. 56, 57).

he brings a claim against Smith and David, custody officers at FCCC, for the use of excessive force, in violation of the Eighth Amendment (Count I). (Doc. 30 at 3-6, 8-9.) He seeks compensatory and punitive damages. (Id. at 9.)[2]

Kineard alleges that on May 10, 2023, Smith approached his cell door while using profanity and told him to get off the door. (Id. at ¶¶ 1, 4.) He alleges that Smith threatened to deprive him of his meal, after which Kineard requested to speak with the duty Captain, because he was tired of being deprived of his meals by Smith. (Id. at ¶ 2.) Kineard adds that Smith and David "constantly committed" such abuse against him. (Id. at ¶ 3.) Kineard alleges that he then asked another resident to get the captain on shift and began kicking his cell door to get the captain to respond. (Id.)

Kineard alleges that Smith again approached the cell door while using profanity and threatened him with physical harm if he did not get off the door. (Id. at ¶ 4.) He alleges that Smith then called for staff to open the cell door, and after the door was open, Smith told David to watch his back, and David told Smith to beat Kineard's ass. (Id. at ¶¶ 5-6.)

---

[2] On October 25, 2024, this Court entered an Opinion and Order granting Defendants Courtney Jones, Jon Carner, and Robert Houston's Motion to Dismiss Kineard's Second Amended Complaint (Doc. 31) and dismissing without prejudice Kineard's Eighth Amendment claims against those Defendants for failure-to-protect and negligent hiring and training (Count II). (Doc. 41.)

Kineard alleges that Smith then began hitting him in the face with closed fists, that he continued to be beaten by "Defendant," and that he fell to the floor while being kicked and "also Smith being egged on by David to continue to commit said harm." (Id. at ¶¶ 6-7.) He adds that Smith and David told him to tell medical staff that he slipped and fell and that if he refused to do so, they would harm him. (Id. at ¶ 8.) Finally, Kineard alleges that he went to the hospital for various injuries and that he told the Sheriff's Office that the slip and fall story was a lie, which he was compelled to do under fear. (Id. at ¶¶ 9-10.)

## II.   Smith and David's Statements of Undisputed Facts

In support of summary judgment, Smith and David submit their affidavits along with the affidavit of Altrina Clarke, a registered nurse at FCCC ("Nurse Clark"). (Doc. 54, Exhibits ("Exs.") A, B, and C, respectively).  The following facts, which Kineard has not disputed, derive from the affidavits:

Smith was an officer at FCCC in May 2023, but is no longer employed there. (Ex. A at ¶ 2.) David was hired at FCCC in 2015 and was also employed as an officer at FCCC in May 2023, but he is no longer employed there. (Ex. B at ¶ 2.) On May 10, 2023, Smith was assigned to the Lakes Dorm ("Lakes") at FCCC. Just after 3:30 pm, he started serving dinner trays and completed the service shortly before 4:30 pm. (Ex. A at ¶¶ 4-5.) During the process, he

noticed he was missing dinner trays for two residents and called down to have them sent to Lakes as soon as possible. (Id.)

Soon after, Kineard emerged from his cell and would not return because he had not received a food tray. (Id. at ¶¶ 6-7.) Smith advised Kineard that he called down to have two food trays sent up, as another resident was also missing a food tray. (Id. at ¶ 7.) Kineard was not receptive to Smith's attempts to counsel him on the situation. (Id.) Smith attests that he never intentionally withheld food trays from Kineard. (Id.) The A-Team then responded to Lakes and assisted in returning Kineard to his assigned cell. (Id. at ¶¶ 8-9.) Within an hour, Kineard began behaving disorderly in his cell, kicking and banging on his cell door. (Id.)

David was working in Ocean dorm at the time and came over to the Lakes dorm after receiving a call to assist Smith. (Ex. B at ¶¶ 4-6.) He attests that Kineard was kicking and banging on his cell door when David was in the area. (Id.)

Smith and David approached Kineard's cell door to counsel Kineard and advise him that his food was coming shortly and to calm down. (Ex. A at ¶¶ 10-11; Ex. B at ¶¶ 7-8.) Kineard instead used profanity in response to them and stated he was "Going to fuck this shit up". (Id.) Smith did not use any profanity towards Kineard. (Id.)

At this point, Kineard had blocked his cell door window with paper so that he could not be seen from outside (a rule

- 4 -

infraction). (Ex. A at ¶¶ 12-13; Ex. B at ¶ 9.) Smith called via radio to have Kineard's cell door opened. (Id.) Once the door was opened, Smith entered the cell, and Kineard aggressively lunged at him. (Ex. A at ¶ 14; Ex. B at ¶¶ 10-11.) Kineard also threw a bottle at Smith and punched Smith with a closed fist while David was outside the room. (Id.) Kineard attempted to throw a second punch at Smith while Smith was in a defensive posture, but Kineard's punch missed, and Kineard either slipped or lost his balance in the liquid on the floor. (Ex. A at ¶ 15; Ex. B at ¶¶ 12-13). Smith believes came from the bottle Kineard threw at him. Kineard then landed face-first on the floor of his cell. (Ex. A at ¶ 16; Ex. B ¶ 13.)

Smith did not strike Kineard at any time, only raising his arm in a defensive posture when Kineard lunged at him. (Ex. A at ¶¶ 23-24; Ex. B at ¶ 20.) Smith also did not strike Kineard while he was on the floor. (Id.) Smith was not in contact with Kineard when he fell, as there was space between them when Kineard tried to punch Smith a second time. (Ex. A at ¶ 28.)

David attests that the time between Smith's initial entry into the cell and Kineard's slip-and-fall was about five seconds. (Ex. B at ¶ 21.) Kineard slipped and fell before David could even help Smith as Kineard was attempting to punch him. (Id.)

Kineard appeared to have lost consciousness, as he did not move. (Ex. A at ¶ 17; Ex. B at ¶ 14.) He was also non-responsive

when Smith attempted to communicate with him. (Id.) David came into the cell to try to wake Kineard. (Ex. A at ¶¶ 18-19; Ex. B at ¶¶ 15-16.) Kineard did not respond when he was shaken or when his name was called. (Id.) Smith became agitated and panicked, concerned that Kineard was not waking up. (Id.) A Code Blue was called, which is a call for medical assistance. (Id.) Kineard woke up and was able to sit up on the floor before medical arrived. (Ex. A at ¶ 20; Ex. B at ¶ 17.) Smith noticed that Kineard was bleeding from his mouth and nose. (Ex. A at ¶ 21.)

Medical staff spoke to Kineard in the cell and then transported him to medical. (Ex. A at ¶ 22; Ex. B at ¶¶ 18-19). Kineard advised the nurse in his cell that he slipped and fell. (Id.) Smith and David attest that they did not advise Kineard to tell medical that he slipped in his cell, nor did they threaten Kineard. (Id.)

Nurse Clarke attests that on May 10, 2023, she responded to a Code Blue call and reported to the Lakes dorm. (Ex. C at ¶¶ 4-5.) She notes that a Code Blue is a call for medical assistance for a resident. (Id.) Nurse Clarke saw Mr. Kineard sitting on his bed when she arrived at his cell, and she noted blood on his eye, nose, and mouth. (Ex. C at ¶ 6.) Kineard stood up, began staggering, and was alert but disoriented. (Ex. C at ¶ 7.)

Nurse Clarke attests that as she began to assess Kineard and treat his injuries, he initially told her, "I don't know what

happened." (Ex. C at ¶ 8.) Kineard then said he recalled what happened and explained to Nurse Clark that he had slipped and fallen. (Ex. C at ¶¶ 9-10.) Kineard did not state to Nurse Clarke at any time during the assessment that he was assaulted or otherwise struck by any officers. (Id.) Kineard was then transported to medical for an evaluation and was transported to the emergency room. (Id. at ¶ 11).

Smith believes the liquid in the bottle that Kineard threw at him was buck, a homemade alcohol the residents at FCCC would make and then consume (another rule violation). (Ex. A at ¶¶ 25.) Kineard's cell had the smell of buck, and Smith believes that is the liquid that Kineard slipped in when he tried to punch him a second time. (Id. at ¶ 26.)

Smith and David deny that they violated Kineard's rights at any time. (Ex. A at ¶ 27; Ex. B at ¶ 22).

### III. Legal Standard

Summary judgment is appropriate only when the Court is satisfied that "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden falls on the movant, who must identify the portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). A genuine issue of material fact exists if "the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To defeat summary judgment, the non-movant must "go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material facts exists." Porter v. Ray, 461 F.3d 1315, 1320 (11th Cir. 2006).

In reviewing a motion for summary judgment, the Court views the evidence and all reasonable inferences drawn from it in the light most favorable to the non-movant. See Battle v. Bd. of Regents, 468 F.3d 755, 759 (11th Cir. 2006). But "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the non-movant relies, are 'implausible.'" Mize v. Jefferson Cty. Bd. of Educ., 93 F.3d 739, 743 (11th Cir. 1996). If the moving party demonstrates entitlement to judgment as a matter of law, the non-moving party must establish each essential element to that party's case. Howard v. BP Oil Co., Inc., 32 F.3d 520, 524 (1994).

Kineard files his Complaint under 42 U.S.C. § 1983. To state a § 1983 claim, a plaintiff must allege that (1) the defendant deprived him of a right secured under the Constitution or federal law, and (2) the deprivation occurred under color of state law. Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011) (citing Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998)). In addition, a plaintiff must allege and establish an affirmative

causal connection between the defendant's conduct and the constitutional deprivation. <u>Marsh v. Butler Cnty., Ala.</u>, 268 F.3d 1014, 1059 (11th Cir. 2001).

## IV.  Analysis

Because Kineard is a civil detainee, his claims arise under the Fourteenth Amendment rather than the Eighth Amendment. <u>Youngberg v. Romeo</u>, 457 U.S. 307, 315-316 (1982). But "the standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments, and it makes no difference whether [the plaintiff] was a…detainee or a convicted prisoner because the applicable standard is the same, so decisional law involving prison inmates applies equally to cases involving…detainees." <u>Keith v. DeKalb Cnty., Ga.</u>, 749 F.3d 1034, 1044 n.35 (11th Cir. 2014) (cleaned up).

The core judicial inquiry in an excessive-force claim is "whether force was applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." <u>Sconiers v. Lockhart</u>, 946 F.3d 1256, 1265 (11th Cir. 2020) (quoting <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37 (2010). A prisoner asserting an excessive-force claim must establish two elements: "the official must have both 'acted with a sufficiently culpable state of mind' (the subjective element), and the conduct must have been 'objectively harmful enough to establish a constitutional violation.'" <u>Id.</u> (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 8

(1992)).  A claim satisfies the subjective element if the force was "sadistically and maliciously applied for the very purpose of causing harm."  Id. The objective component "focuses on whether the official's actions were harmful enough or sufficiently serious to violate the constitution."  Id. (cleaned up). The Supreme Court has noted that prison officials should be given wide-ranging deference in decisions regarding prison security, especially when confronting actual unrest. Whitley v. Albers, 475 U.S. 312, 321-322 (1986).

The affidavits submitted by Smith and David establish that Smith did not use excessive force against Kineard. Kineard was the aggressor, and he came at Smith as soon as Smith entered Kineard's cell after Kineard refused orders and covered his window to prevent staff from observing him. The affidavits establish that Kineard slipped and fell, resulting in him landing on his face while Kineard was attempting to throw a second punch at Smith, while David was outside of the cell.

Kineard gave Nurse Clark the accurate account of the events when she arrived in his cell after the incident, telling her he had fallen. He did not tell Nurse Clarke that he was assaulted by either Smith or David. Kineard later changed his story to claim that Smith assaulted him while David allegedly egged Smith on.

- 10 -

In sum, Kineard has not established that Smith or David used excessive force against him at any time on the date of the incident.

Accordingly, it is hereby

**ORDERED:**

1. Defendants Trayvis Smith and Gideon L. David's Motion for Summary Judgment (Doc. 54) is **GRANTED.** The Clerk shall enter judgment in favor of defendants Smith and David and plaintiff shall take nothing.

2. Kineard's Motion for Entry of a Settlement Proffer (Doc. 53) is **DENIED AS MOOT.**

3. The Clerk shall also enter judgment dismissing defendants Jon Carner, Robert Houston, and Courtney Jones without prejudice pursuant to the Opinion and Order (Doc. #41).

4. The Clerk shall terminate any pending motions and deadlines, and to close this case.

**DONE and ORDERED** at Fort Myers, Florida, this ___26th___ day of February 2026.

_____
JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: FTMP-1

Copies:
All parties

- 11 -